UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RON SWAIN, a/k/a RAYMOND X. BAILEY, | ) ) ) | Case No. 3:22-cv-338 |
| *Plaintiff*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Jill E. McCook |
| MICHAEL W. PARRIS, ANTHONY HILL, JUSTIN MOORE, and LEE DOTSON, | ) ) ) ) ) | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ron Swain, an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Morgan County Correctional Complex ("MCCX") has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. 2), a motion to supplement his complaint with an exhibit (Doc. 7), and a motion for a temporary restraining order (Doc. 3). Plaintiff has paid the filing fee. For the reasons articulated below, the Court will **GRANT** Plaintiff's motion to supplement his complaint, **DENY** Plaintiff's motion for a temporary restraining order, and allow Plaintiff's claims to proceed against Defendants.

### I. MOTION TO SUPPLEMENT

Plaintiff has filed a motion to supplement his § 1983 complaint with a copy of a July 14, 2022, letter to TDOC Assistant Commissioner Lee R. Dotson (Doc. 7). The Court finds the motion well taken, and it will be granted.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §§ 1915(e)(2)(B). The dismissal standard that the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under (28 U.S.C. §§ 1915(e)(2)(B) and 1915A) because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The Supreme Court has instructed that courts should liberally construe pro se pleadings and hold them "to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above the speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570 (citation omitted).

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis*, 695

F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

B.  **Plaintiff's Allegations**

On July 5, 2022, MCCX Corporal Anthony Hill and Sergeant Justin Moore "conferred with the signature of Warden Michael W. Parris" to reject four copies of an essential Islamic text, *Message to the BlackMan*, that were ordered by Plaintiff's cousin and shipped to Plaintiff from a recognized publisher and distributor in accordance with TDOC policy. (*Id*. at 4.) The books were rejected under TDOC policy 507.02.C.3, which states, in relevant part:

> Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden/Superintendent, it could reasonably be considered to: (1) Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

(*Id*. at 4.)

Plaintiff contends that he has previously ordered and received the same book at MCCX, and that *Message to the BlackMan* is an essential Islamic text that has been allowed in TDOC institutions since the early 1960's. (*Id*. at 4–5.) The text is necessary, Plaintiff maintains, in order to aid Muslims in properly interpreting the *Bible* and *Quran.* (*Id*. at 5.)

On July 14, 2022, Plaintiff appealed the rejection of his mail to TDOC Assistant Commissioner Lee R. Dotson, who agreed with the decision of MCCX staff in a response backdated to June 27, 2022. (*Id*. at 6.) Defendant Dotson's response stated that while the books were not a direct security threat, "in a correctional setting, the material could incite violence based on race, religion, sex, creed, or nationality." (*Id*.)

On August 9, 2022, Plaintiff filed a grievance alleging discriminatory racial and religious practices. (*Id*.) Plaintiff had not received a "legitimate response" to the grievance as of September 26, 2022, the date on which his § 1983 complaint was signed. (*Id*. at 6–7.)

3

Aggrieved, Plaintiff filed the instant action alleging that Defendants have violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as Plaintiff's free exercise, equal protection, and due process rights. (*Id*. at 4.) By way of relief, he asks the Court to ensure that all members of the Nation of Islam are afforded equal rights at TDOC institutions and to order revision of TDOC mail policies to accommodate religious literature. (*Id*. at 7.)

**C.     Analysis**

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350–53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)–(2).

Additionally, religious practices aside, "[f]reedom of speech is not merely freedom to speak; it is also freedom to read." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005) (citation omitted). Absent sufficient penological objectives, interference with the freedom to read violates an inmate's constitutional rights. *See, e.g., Wilkinson v. Skinner*, 462 F.2d 670,

4

673 n.5 (2nd Cir. 1972) (noting "refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights").

Here, Plaintiff maintains that he ordered four copies of a previously authorized, essential religious text from a recognized Islamic publisher, and that the text was rejected as violative of the mail policy as a pretense for racial and/or religious discrimination. At this stage of the litigation, the Court is without sufficient information to determine if the restriction imposed on Plaintiff is a valid means of maintaining penological objectives or an invalid regulation that violates Plaintiff's constitutional and statutory rights. Accordingly, the Court finds Plaintiff's allegations sufficient to state a plausible claim against Defendants under RLUIPA, as well as the First and Fourteenth Amendments to the United States Constitution.

## IV. MOTION FOR INJUNCTIVE RELIEF

Plaintiff has also filed a motion seeking injunctive relief "to ensure that [he] receive[s] justification on the bases of discrimination and illegitimately applied policies." (Doc. 3, at 2.) Motions for injunctive relief are governed by Rule 65 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65. Because Plaintiff filed the instant motion before any Defendant has been served, the Court treats it as a motion for a temporary restraining order ("TRO"). *See* Fed. R. Civ. P. 65(b).

In determining whether to grant a TRO, courts balance the following factors: (1) whether plaintiff "has shown a strong likelihood of success on the merits;" (2) whether plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted). The first factor, likelihood of success on the merits, is the most important factor and typically determines the outcome of the motion. *See Obama for America v. Husted*, 697 F.3d

5

423, 436 (6th Cir. 2012).  Even where success on the merits is shown, however, injunctive relief is "an extraordinary remedy never awarded as of right."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Rather, it "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet*, 305 F.3d at 573.

Here, Plaintiff is essentially asking the Court to provide him relief as though he has already prevailed on the merits of this case.  However, the purpose of injunctive relief is to maintain the parties' positions until they can be heard on their merits at trial.  *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The record at this point does not contain any information that would suggest that Plaintiff has a strong likelihood of success on the merits.  Instead, at this juncture, Plaintiff's ability to prove a constitutional violation is merely speculative.  The Court has determined only that he may be able to state a plausible claim if allowed to proceed with his allegations.

As to the third and fourth factors, the Court notes that while a public interest is served by upholding the civil rights of all individuals, there is also a strong public interest in leaving the administrative matters of state prisons in the hands of jail officials.  *McCord v. Maggio*, 910 F.2d 1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention," except in extreme circumstances).  In fact, courts are reluctant to interfere in the day-to-day operations of a prison system unless presented with substantial evidence of patently unreasonable conduct.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).  Here, Plaintiff will not suffer substantial harm if he is not allowed to obtain new copies of religious texts until this matter may be heard on its merits, and the Court finds that the public interest in leaving administrative matters of state prisons in the hands of jail officials weighs against entry of a preliminary injunction in this case.  *Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013); *see also Glover*, 855 F.2d 277 (6th Cir. 1988) (setting forth various

6

public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). Accordingly, Plaintiff's motion for injunctive relief (Doc. 3) will be **DENIED**.

V.    **CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion to supplement his compliant (Doc. 7) is **GRANTED**;

2. Plaintiff's claims against Defendants shall **PROCEED** as set forth above;

3. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Parris, Hill, Moore, and Dotson;

4. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to Plaintiff for service;

5. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

6. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default as to that Defendant;

7. Plaintiff's motion for injunctive relief (Doc. 3) is **DENIED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within (14) fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**